UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON M. MCHENRY,                                  Case No. 14-14300

              Plaintiff,                         John Corbett O'Meara
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Stephanie Dawkins Davis
                                                   United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 15)**

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On November 6, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett O'Meara referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for benefits.  (Dkt. 3).  This matter was reassigned to the undersigned Magistrate Judge on January 5, 2016, pursuant to administrative order.  (*See* Text-Only Order dated January 5, 2016).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 13, 15).

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims for period of disability, disability insurance benefits, and supplemental security income on February 8, 2012, alleging disability beginning May 5, 2011. (Dkt. 9-2, Pg ID 46).   Plaintiff's claim was initially disapproved by the Commissioner on June 28, 2012. *Id.*  Plaintiff requested a hearing and on May 6, 2013, plaintiff appeared, along with his attorney, before Administrative Law Judge (ALJ) JoErin O'Leary, who considered the case de novo.  (Dkt. 9-2, Pg ID 102-136).  In a decision dated July 16, 2013, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 43-57).  Plaintiff requested a review of this decision on August 6, 2013.  (Dkt. 9-2, Pg ID 42).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on September 23, 2014, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 31-35); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1972 and was 39 years old on the alleged onset date. (Dkt. 9-2, Pg ID 56).  Plaintiff's last date insured was December 31, 2013.  (Dkt. 19-2, Pg ID 48).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  *Id*.  At step two, the ALJ found that plaintiff's status post left femur fracture, status post left tibial/fibular fracture, lumbar degenerative disc disease, cognitive disorder not otherwise specified, depressive disorder, and anxiety related disorder were "severe" within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 9-2, Pg ID 49).  The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can never climb ladders, ropes, or scaffolds. He can frequently balance,

3

stoop, and crouch. He can only occasionally kneel and
crawl. The claimant must avoid exposure to extremes of
cold, heat, humidity, and vibration. He is limited to
simple, routine, repetitive tasks. He should not be
required to work with the general public. He can work
around coworkers and supervisors throughout the day, but
he can tolerate only occasional interaction with them.

(Dkt. 9-2, Pg ID 51). At step four, the ALJ concluded that plaintiff could not

perform his past relevant work as an automobile mechanic. (Dkt. 9-2, Pg ID 55).

At step five, the ALJ denied plaintiff benefits because plaintiff could perform a

significant number of jobs available in the national economy. (Dkt. 9-2, Pg ID 56-

57).

     B.    <u>Plaintiff's Claims of Error</u>

First, plaintiff contends that the ALJ failed to give sufficient or controlling

weight to plaintiff's treating physician. While the ALJ acknowledged that Dr.

Awerbuch was a "treating specialist," she found that his opinion was inconsistent

with the plaintiff's activities of daily living as well as a consultative examiner's

physical examination findings. The ALJ also pointed to inconsistencies with

available imaging studies and nerve conduction studies. Thus, according to

plaintiff, the gravamen of the decision by the ALJ to place little weight on the

treating source opinion is the purported lack of consistency with other evidence

of record. Plaintiff maintains that this conclusion is not supported by the record.

For example, Dr. Jiddou, the consultative physical examiner, noted that plaintiff

was able to walk "with a cane," was able to squat and bend forward only using a chair for support and was unable to walk on heels and toes despite the cane or the help of the examiner. (Dkt. 9-2, Pg ID 52). Plaintiff also presented with what the examining physician described as "marginally diminished" range of motion in the lumbar spine. Plaintiff asserts that while there may not be total synchronicity between the opinion of Dr. Jiddou and that of Dr. Awerbuch, there certainly were common findings concerning limitations.

Furthermore, the ALJ asserted that the radiographic studies did not support Dr. Awerbuch's opinion. However, according to plaintiff, the CT examination performed on September 1, 2010, revealed a small central disc bulge or herniation at L5-SI, as well as an eccentric disc bulge at L5-S1. (Dkt. 9-7, Pg ID 356). The scan also revealed degenerative disc changes at L3-4 with multifocal chronic appearing schmoral's nodes at Ll-L3. *Id*. Plane film x-rays revealed mild degenerative disc narrowing in the lumbar spine. *Id*. at 358. Plaintiff asserts that these radiographic findings are consistent with the treatment records of Dr. Awerbuch dating back to May of 2011, as well as the records of plaintiff's primary care physicians.

Next, plaintiff points to the Exhibit 1 attached to his brief, which is a record of a surgical procedure performed on April 9, 2015, by Dr. Mark S. Adams. Dr. Adams, a neurosurgeon, carried out a minimally invasive right L5-S1

5

hemilaminectomy, medial facetectomy, foraminotomy, and micro discectomy as well as a bilateral L5-S 1 facet rhizotomy.  Thus, plaintiff contends that he underwent surgery at the exact vertebral level where abnormalities were first ascertained five years previously and which were the focus of Dr. Awerbuch's treatment.

Plaintiff also suggests that it is ironic that the ALJ rejected Dr. Awerbuch 's opinion based in part on the content of plaintiff's testimony concerning his activities of daily living while, at the same time, finding plaintiff's testimony concerning his symptomatology to be less than credible.  According to plaintiff, the ALJ "cannot have it both ways."  The ALJ referenced in passing plaintiff's ability to drive a car and his "minimal" problems with personal care.  According to plaintiff, the fact that he reportedly enjoyed reading, camping and using a remote control car, does not call into question the veracity of his testimony regarding his limitations from a functional standpoint.  Plaintiff testified that in his last employment situation he could only work for 10 to 20 minutes and would have to sit down.  Thus he was unable to complete his work at a reasonable pace.  (Dkt. 9-2, Pg ID 111-112).  Plaintiff testified that at the time of the hearing he was able to walk to his mail box which was about 50 yards from his home, but even then would have to stop at least three times during the journey and would need to use his cane for support.  (Dkt. 9-2, Pg ID 120-121).

Plaintiff contends that the failure to place appropriate weight upon the treating source statement completely altered the ultimate determination in the case. If one was to accept the limitations in the treating source statement, plaintiff would clearly be precluded from substantial gainful activity pursuant to the testimony of the Vocational Expert. The VE opined in response to a hypothetical that the inability to maintain regular attendance, the need to arrive late and/or leave early, and the need to miss work up to four times per month were all work preclusive limitations. (Dkt. 9-2, Pg ID 133). Further, the VE indicated that if an individual is off task 15% of the time such would be inconsistent with sustaining employment and be work preclusive. *Id*. According to plaintiff, the ALJ did not articulate her analysis of the six factors in § 1527, at least in a negative sense so as to justify the rejection of the treating source statement. Plaintiff contends that the only negative gloss placed on the "consistency" or "supportability" factors was misplaced and not based on substantial evidence in the record. Specifically, the records of plaintiff's primary care physicians are consistent with and support the findings of Dr. Awerbuch. A note in the records of Dr. Mulders described plaintiff in 2010 as a patient of Dr. Pontus (a psychiatrist) with chronic hip, knee and back pain. Plaintiff's pain was so intense efforts to wean him from Norco had proven unsuccessful. (Dkt. 9-7, Pg ID 375). An evaluation by Dr. Beth Shelton dated February 8, 2011, substantiated chronic pain which had not been adequately

7

controlled.  (Dkt. 9-7, Pg ID 377-379).  A similar note is dated March 8, 2011.  *Id*.

at 383.  Plaintiff also points to his work history and contends that it is not plausible

that someone who worked seven days a week, eleven or twelve hours per day

would ultimately misrepresent his level of pain and disability.  *Id*. at 419.

Next, plaintiff asserts that the ALJ's credibility analysis was superficial and

flawed.  According to plaintiff, the longitudinal treatment for chronic low back

pain from 2009 through the date of the decision, ultimately culminating in the

surgery performed by Dr. Adams in April 2015, supports the limitations and

symptoms reported by plaintiff.  Plaintiff contends that the credibility assessment

does not take into account the factors enumerated by the relevant regulation or in

case law.  For example, there was no cogent discussion by the ALJ of plaintiff's

use of medications to control his pain (as evidenced by the records over the years

including the prescribing of Norco), the location, frequency and intensity of

complaints of pain or symptoms, and ultimately the treatment other than medication

plaintiff received.

Plaintiff next argues that the failure of the RFC to incorporate the limitations

found by Dr. Awerbuch in the Treating Source Statement clearly renders the RFC

defective and thus the vocational testimony relied on by the ALJ does not serve to

support the conclusions reached in the case.  The longitudinal record reveals that

plaintiff long received treatment for chronic leg and back pain and that the severity

of the pain certainly supported the functional limitations stated by plaintiff.

Finally, plaintiff asserts there is good cause for remand under Sentence Six because there is evidence that did not exist until after the ALJ's decision. Regarding materiality, plaintiff can demonstrate that there is a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence. Again, plaintiff points out that there has been consistent complaints of back and leg pain for years by plaintiff. As far back as 2010, objective radiographic evidence existed of an abnormality at L5-S1 and thus in plaintiff's lumbar spine. On April 9, 2015, plaintiff underwent surgery for conditions at that vertebral level. According to plaintiff, the fact that this surgery was deemed necessary by a well-respected neurosurgeon lends significant support to the limitations stated by Dr. Awerbuch in the Treating Source Statement. Plaintiff maintains that the surgery performed by Dr. Adams was completely consistent with the longitudinal medical record of this case.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner first addresses plaintiff's request for a Sentence Six remand. According to the Commissioner, plaintiff's new evidence is not material and thus, does not warrant remand. In 2015, almost two years after the relevant period, plaintiff had back surgery. The Commissioner points out that this surgery occurred after the administrative process ended, and after he started this court case.

9

Plaintiff argues this 2015 surgery would have affected the ALJ's decision, and requires remand.  In the present case, plaintiff's 2015 surgery was not material.  It showed no limitations during the relevant period beyond those the ALJ assessed. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) ("The new evidence was compiled [more than one year after the relevant period], and it does not reveal further information about the claimant's ability to perform light or sedentary work [during that period].").  Plaintiff argues it confirms his back pain, yet the ALJ accepted he had severe back problems and assessed limitations to account for this.  (Dkt. 9-2, Pg ID 51-55).  According to the Commissioner, the question is whether this surgery showed limitations beyond those the ALJ found. The Commissioner maintains that it does not; rather, it is treatment, years after the relevant time, and does not show further limitations.

Moreover, the Commissioner points out that plaintiff himself already said his condition was worsening.  (Dkt. 9-2, Pg ID 111; Dkt. 9-6, Pg ID 286).  Thus, while the surgery may be evidence of further decline, it is not material.  *See Sizemore*, 865 F.2d at 712 ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition."). At most, the Commissioner maintains that it simply shows plaintiff needed surgery in 2015 but plaintiff has not shown this surgery was material to the period in question.

The Commissioner also argues that the ALJ properly considered Dr.

10

Awerbuch's opinion. Among other things, Dr. Awerbuch opined plaintiff could sit only 30 minutes at a time, and only 2 hours total in a workday. (Dkt. 9-7, Pg ID 508-509) If a treating doctor's opinion is both well supported by clinical evidence and not inconsistent with other evidence, the ALJ will give the opinion controlling weight. The ALJ considered Dr. Awerbuch's opinion, but noted inconsistencies with the rest of the record:

> (1) Plaintiff's daily activities were inconsistent with Dr. Awerbuch's opined limitations (Dkt. 9-2, Pg ID 54; Dkt. 9-6, Pg ID 281, 284, 290, 292; Dkt. 9-7, Pg ID 368, 509);
>
> (2) Dr. Jiddou's exam found a full grip and no muscle weakness, directly conflicting with Dr. Awerbuch's opined limitations (Dkt. 9-2, Pg ID 54; Dkt. 9-7, Pg ID 374, 508-509);
>
> (3) Testing found no sign of radiculopathy in Plaintiff's legs, despite Dr. Awerbuch's opinion that Plaintiff had serious leg pain limitations (Dkt. 9-2, Pg ID 54; Dkt. 9-7, Pg ID 374, 386, 508-509); and
>
> (4) X-rays showed no acute knee problems, inconsistent with Dr. Awerbuch's opined knee limitations (Dkt. 9-2, Pg ID 54; Dkt. 9-7, Pg ID 359, 508-509).

Thus, the Commissioner urges the Court to conclude that The ALJ cited substantial evidence inconsistent with Dr. Awerbuch's opinion, and so permissibly discounted it.

The Commissioner also argues that the ALJ permissibly gave greater weight to non-treating opinions. "[T]he ALJ's decision to accord greater weight to state

11

agency physicians over [the claimant's] treating sources was not, by itself, reversible error." *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 409 (6th Cir. 2009); *see also Combs v. Comm'r of Social Sec.*, 459 F.3d 640, 651 (6th Cir. 2006) (en banc) (affirming ALJ decision adopting reviewing physician opinion over treating opinion). Here, according to the Commissioner, the ALJ cited substantial evidence inconsistent with Dr. Awerbuch's opinion, as set forth above. Thus, the Commissioner contends that there was no need to assign controlling weight. And, the ALJ explained his weight assignments for the opinions of Drs. Jiddou and Brophy, which is all that is required. Social Security Ruling 96-6p, 1996 WL 374180, at *2 (ALJs "must explain the weight given to the [state agency] opinions in their decisions").

The Commissioner also asserts that it does not matter if some evidence supported Dr. Awerbuch's opinion. The question is whether there was substantial evidence inconsistent with it. *See Bogle*, 998 F.2d at 347-48. According to the Commissioner, the ALJ cited substantial evidence inconsistent with the opinion. This included daily activities, the medical record, and the other doctors' opinions. Thus, the ALJ could properly could discount it. The Commissioner also contends that the post-administrative evidence would not change the evaluation of Dr. Awerbuch's opinion because the 2015 surgery was almost two years after the relevant period. Thus, treatment given years later was simply not relevant to

12

consideration of this opinion.

The Commissioner also contends that the ALJ could consider plaintiff's daily activities in evaluating Dr. Awerbuch's opinion. Plaintiff argues the ALJ erred by finding his daily activities inconsistent with Dr. Awerbuch's opinion. However, the Commissioner maintains that daily activities are part of the record, and therefore relevant in opinion analysis. As the ALJ noted, plaintiff could drive, read, cared for his toddler, had friends, and went camping. (Dkt. 9-2, Pg ID 54; Dkt. 9-6, Pg ID 284; Dkt. 9-7, Pg ID 368). The ALJ supportably found these activities inconsistent with the extreme limitations in Dr. Awerbuch's opinion. The Commissioner asserts that there was no error in observing this inconsistency. Plaintiff suggests there was some contradiction or "irony" in finding plaintiff less than fully credible about his symptoms, and also that his daily activities conflicted with Dr. Awerbuch's opinion. According to the Commissioner, the ALJ did not reject all of plaintiff's testimony; rather, he found plaintiff largely, but not entirely, credible. (Dkt. 9-2, Pg ID 51-55). The ALJ accepted much of plaintiff's daily activity reports, and noted there were some inconsistencies with Dr. Awerbuch's opinion. He then resolved this inconsistency by partially discounting the opinion.

The Commissioner also argues that the ALJ adequately considered the regulatory factors and there was no need for her to list them out. According to the Commissioner, in the Sixth Circuit, the ALJ need only give good reasons in her

13

opinion analysis.  She need not list out the regulatory factors.  The Sixth Circuit

has even found a failure to expressly give good reasons harmless under certain

facts.  *Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 726 (6th Cir. 2004) ("Even

assuming … the ALJ did not technically meet the procedural requirement to give

'good reasons,' this was harmless error.").  Here, the ALJ considered Dr.

Awerbuch's neuroscience specialty, the details of his opined limitations, and his

history treating plaintiff.  (Dkt. 9-2, Pg ID 54).  But the ALJ also noted various

other record evidence inconsistent with the opinion.  Thus, the Commissioner

maintains that the ALJ expressly discussed most of the regulatory factors, and gave

good reasons for discounting the opinion.

The Commissioner also contends that the ALJ's credibility analysis is

supported by substantial evidence.  Specifically, the ALJ cited the following

credibility factors:

> (1) Plaintiff claimed disabling leg pain, yet ankle, knee,
> and hip radiographs did not show acute problems (Dkt. 9-
> 2, Pg ID 52; Dkt. 9-7, Pg ID 357, 358, 359;
>
> (2) Plaintiff claimed radiculopathy pain in his legs, yet
> testing did not support this (Dkt. 9-2, Pg ID 52; Dkt. 9-3,
> Pg ID 146; Dkt. 9-7, Pg ID 386);
>
> (3) Dr. Jiddou also found Plaintiff could walk with a
> steady gait (Dkt. 9-2, Pg ID 52; Dkt. 9-7, Pg ID 374);
>
> (4) Plaintiff said he could not handle things due to hand
> weakness, but Dr. Jiddou found "full grip strength and

14

finger dexterity" (Dkt. 9-2, Pg ID 52; Dkt. 9-7, Pg ID 374);

(5) Dr. Jiddou also found full range of motion in Plaintiff's ankles and knees, conflicting with Plaintiff's claims of stiff joints (Dkt. 9-2, Pg ID 52; Dkt. 9-7, Pg ID 374);

(6) Plaintiff alleged disabling mental health problems, but never saw a mental health specialist (Dkt. 9-2, Pg ID 53);

(7) Plaintiff was able to drive, read, camp, and play with remote control cars, which appeared inconsistent with his alleged mental and physical limitations (Dkt. 9-2, Pg ID 54; Dkt. 9-6, Pg ID 284; Dkt. 9-7, Pg ID 368;

(8) Plaintiff was able to care for his 3-year-old child (Dkt. 9-2, Pg ID 54; Dkt. 9-7, Pg ID 368); and

(9) Drs. Lombardo, Jiddou, Brophy, and Jones Smith all found Plaintiff not disabled, contrary to his allegations (Dkt. 9-2, Pg ID 54-55; Dkt. 9-3, Pg ID 173-174, 176; Dkt. 9-7, Pg ID 366-371; 372-374).

According to the Commissioner, taken together, the ALJ cited substantial evidence for his credibility finding.

The Commissioner asserts that plaintiff does not explain how his treatment supports his claim that the ALJ erred because his "longitudinal treatment for chronic low back pain from 2009 through the date of the Decision … supports the limitations and symptoms reported by Plaintiff." (Dkt. 13, PgID 535). The Commissioner points out that he had only medication treatment during the relevant period and plaintiff's medication treatment does not undermine the ALJ's cited

15

inconsistencies.  Again, the Commissioner asserts that the issue is whether substantial evidence supports the ALJ's credibility analysis; that is, it does not matter if another credibility conclusion were also reasonable.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion").

Finally, Plaintiff argues the ALJ had to recite and discuss certain regulatory factors under 20 C.F.R. § 404.1529(c) and 416.929(c).  Again, the Commissioner maintains that there was no need for the ALJ to discuss each factor.  *Collison v. Comm'r of Social Sec.*, 2012 WL 3667976, at *8 (E.D. Mich. Aug. 22, 2012) (ALJ not required to "explicitly discuss each of the credibility factors identified in 20 C.F.R. § 404.1529(c)(3)") (citing *Bowman v. Chater*, 132 F.3d 32, 1997 WL 764419, at *4 (6th Cir. 1997)).  Regardless, the Commissioner points out that the ALJ did note plaintiff's alleged daily activities, symptoms and limitations, medications, and treatment history.  (Dkt. 9-2, PgID 51-55).  The ALJ further noted that the objective clinical findings, including the radiographs, did not fully support Plaintiff's alleged symptoms.  Thus, despite not needing to, the Commissioner contends that the ALJ expressly considered many of the regulatory factors.  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

## II.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v.*

18

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing

19

in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his or
> her past relevant work, if other work exists in the national
> economy that plaintiff can perform, in view of his or her
> age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

21

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

1.   Treating Physician

Title 20 C.F.R. § 404.1527 specifies how an ALJ must evaluate medical

22

opinion evidence.  An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 802 (E.D. Mich. 2013) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence.  *Id*.  "[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires." *Id.* (citing *Wilson*, 378 F. 3d at 545).  But this error is not always dispositive, and may be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings

23

consistent with the opinion; or (3) where the Commissioner has met the goal of

§ 1527(d)(2) ... even though she has not complied with the terms of the regulation."

 *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at

547).

When refusing to give controlling weight to a treating source, an ALJ must

give good reasons for discounting the weight given to a treating-source opinion.

*Dickey-Williams,* 975 F.Supp.2d at 803 (citing *Gayheart v. Comm'r of Soc. Sec.*,

710 F.3d 365 (6th Cir. 2013)). These reasons must be supported by the evidence in

the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight. *Gayheart*, 710 F.3d at 376. This procedural

requirement ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule. *Id*.

In *Gayheart*, the court ruled that the ALJ failed to set forth good reasons for

how and why the treating doctor's opinions failed the controlling weight test

because, *inter alia*, he did not identify the substantial evidence that was purportedly

inconsistent with the treating source's opinions. *Id.* at 376-377. Here, in contrast,

the ALJ was more specific: Dr. Awerbuch's opinions were not accorded controlling

weight because they were not consistent with his own treatment notes, with the

objective test results in the record, with plaintiff's own normal daily activities and

24

with the opinions of the state agency reviewing physician.  Unlike *Gayheart*, this is not a case in which the Court could not determine, under the principles of meaningful appellate review of the ALJ's decision, what evidence the ALJ relied on to substantiate his conclusion of less than controlling weight.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).  The ALJ thoroughly examined Dr. Awerbuch's opinion and the substantial evidence the ALJ relied on not only existed, but was discussed at length in the ALJ's decision.  *See Dickey-Williams*, 975 F.Supp.2d at 804.

The undersigned finds that ALJ's recitation of record evidence inconsistent with Dr. Awerbuch's opinions served as the requisite good reason for him to assign those opinions less than controlling weight.  *See Dickey-Williams,* 975 F.Supp.2d at 801-807.  The ALJ clearly identified, discussed and relied upon substantial legitimate evidence contradicting Dr. Awerbuch's opinions, including his own treatment notes, thereby satisfying 20 C.F.R. §1527(d)(2), and thus the third prong of the harmless error standard set forth in *Cole*.  *Id*.

### 2.    Credibility/RFC

Plaintiff also claims that the ALJ's credibility analysis is flawed and is not based on a proper characterization of record evidence.  However, credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d

25

589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective

26

medical evidence, statements and other information provided by treating or
examining physicians . . . and any other relevant evidence in the case record" to
determine if the claimant's claims regarding the level of his pain are credible. SSR
96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. Consistency
between the plaintiff's subjective complaints and the record evidence 'tends to
support the credibility of the [plaintiff], while inconsistency, although not
necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of
Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The undersigned agrees with the Commissioner that the ALJ's decision
regarding plaintiff's credibility, the impact of the credible limitations caused by
pain, and the ultimate RFC findings are supported by substantial evidence. The
medical evidence does not support the extensive limitations claimed by plaintiff.
For example, while plaintiff claimed disabling leg pain, the x-ray of his left leg
showed no acute or complicating process. (Dkt. 9-7, Pg ID 357). His knee x-ray
showed no acute knee process and his ankle was stable and unremarkable. (Dkt. 9-
7, Pg ID 359-360). Plaintiff claimed radiculopathy pain in his legs, yet testing did
not support this diagnosis. (Dkt. 9-7, Pg ID 386). Plaintiff said he could not
handle things due to hand weakness, but Dr. Jiddou found "full grip strength and
finger dexterity." (Dkt. 9-7, Pg ID 374). Dr. Jiddou also found full range of
motion in plaintiff's ankles and knees, conflicting with Plaintiff's claims of stiff

27

joints. *Id*. Moreover, Drs. Lombardo, Jiddou, Brophy, and Jones Smith all found plaintiff not disabled, contrary to his allegations.

The ALJ also properly pointed out that plaintiff was able to drive, read, camp, and play with remote control cars, which appeared inconsistent with his alleged mental and physical limitations. And plaintiff was able to care for his 3-year-old child. These factors support the ALJ's credibility determination.

Additionally, plaintiff only received conservative treatment during the period at issue, which suggests that his limitations were not as disabling as he claimed. The Commissioner points out that he had only medication treatment during the relevant period and plaintiff's medication treatment does not undermine the ALJ's cited inconsistencies. *See Villarreal v. Sec'y of Health & Human Servs*., 818 F.2d 461, 463 (6th Cir. 1987) (finding it reasonable for fact finder to rely on plaintiff's "conservative treatment" in assessing credibility); SSR 96-7p, at *7 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."). The undersigned agrees with the Commissioner that substantial evidence supports the ALJ's credibility analysis, even if there is evidence to support another conclusion.

The undersigned also concludes that, to the extent necessary, the ALJ also discussed the regulatory factors under 20 C.F.R. § 404.1529(c) and 416.929(c). Specifically, the ALJ noted plaintiff's alleged daily activities, symptoms and

limitations, medications, and treatment history along with the objective clinical findings, including the radiographs. Thus, the undersigned finds no error in this regard.

### 3.   Sentence Six

A plaintiff attempting to introduce new evidence must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *see also Brace v. Comm'r of Soc. Sec.*, 97 Fed. Appx. 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. Appx. 852, 859 (6th Cir. 2003). Moreover, under sentence six of 42 U.S.C. § 405(g), plaintiff has the burden of demonstrating that this evidence is "new" and "material" and that there is a "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. "Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 Fed. Appx. 593, 598-99 (6th Cir. 2001). Additionally, in order to

establish materiality, plaintiff must show that the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 Fed. Appx. 547, 550 (6th Cir. 2007).

Here, even if plaintiff could establish "good cause," he has failed to establish that the records are "material," and thus has not met his burden for a sentence six remand. To establish "materiality," plaintiff must explain how the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. The additional records do not contain any opinions on plaintiff's functional ability through the last date insured and, even if they did, such retrospective opinions would not support plaintiff's disability through the last date insured of December 31, 2013. *See e.g.*, *Wladysiak v. Comm'r of Soc. Sec.*, 2013 WL 2480665, at *11 (E.D. Mich. 2013), *citing Lancaster v. Astrue*, 2009 WL 1851407, at *11 (M.D. Tenn. 2009) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period."). Thus, in the view of the undersigned, the records of plaintiff's surgery, which occurred well after the last date insured, are not material and a Sentence Six remand is not warranted.

IV.    **RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

31

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: March 1, 2016                        s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on March 1, 2016, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov